

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW
2 W. Washington Street
Suite 400
Greenville, SC 29601
T: (864) 373-2300  F: (864) 373-2925
**nelsonmullins.com**

Miles E. Coleman
Attorney
T: (864) 373-2352
miles.coleman@nelsonmullins.com

September 3, 2025

**Via Electronic Filing**
Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit

    RE: **Response to Status Report**
           *Lopez v. United States of America*, No. 25-5197

Dear Ms. Dwyer:

    The government's "status report" reports nothing of substance but instead scolds this Court for taking "over two weeks" to deliberate on extensive emergency briefing in three important cases. Dkt. 20.1 at 1. The scolding is ironic, given that the government's demand for an "immediate decision," *id.*, comes after years of delay of the government's own making.

    Before any court ever lifted a finger, the government itself voluntarily delayed this land transfer for over twenty years. First, from 2005 to 2013, Congress rejected twelve standalone bills proposing it. Dkt. 3.1 at 8. Second, after the transfer was slipped in as a midnight rider to a must-pass defense spending bill in 2014, the government took another eleven years to begin moving forward with it—waiting seven years to publish the first EIS, only to withdraw it voluntarily (ignoring the 60-day transfer deadline it now touts as a congressional mandate), and then waiting another four years to publish it again. *Id.* at 17. During this entire decade plus, neither the government nor Resolution ever claimed that this self-imposed delay flouted "a congressional mandate" or caused "irreparable harm." Dkt. 20.1 at 2.

    That's because the project is anything but urgent. The copper is not going anywhere. If the transfer and mine are eventually upheld—which is unlikely on the current record—Resolution can still recover every ounce of copper. And even if the land were transferred immediately, no copper would be produced for a decade or more. By contrast, if the project moves forward without Plaintiffs having a fair chance

September 3, 2025
Page 2

to litigate their claims, "'[i]t is undisputed' that [the mine] will permanently 'destroy the Apaches' historical place of worship, preventing them from ever again engaging in religious exercise' at Oak Flat." *Apache Stronghold v. United States*, 145 S. Ct. 1480, 1480 (2025) (Gorsuch, J., dissenting from denial of certiorari).

That is why one court below held that "[t]here is no close question in this matter. It is abundantly clear that the balance of equities 'tips sharply' in Plaintiff's favor," because the harms they face are permanent, while the government faces only temporary delay. *Apache Stronghold v. United States*, No. 21-cv-50, 2025 WL 1360694, at *9 (D. Ariz. May 9, 2025).

Yet even as the Forest Service has taken more than a decade on the EIS—without any judicial action by Resolution to hasten the process—it has repeatedly sought to deprive the judiciary of the time needed to consider the weighty constitutional and statutory problems with the EIS and transfer.

First, while the Supreme Court was considering the petition for certiorari in *Apache Stronghold*, the government announced it would republish the EIS on June 16, 2025, and convey Oak Flat to Resolution immediately thereafter—potentially short-circuiting the Supreme Court's review. The plaintiff in *Apache Stronghold* asked the government to agree not to transfer the land until the Supreme Court completed its review, but the government refused. Accordingly, Judge Logan issued a temporary injunction prohibiting the government from conveying Oak Flat to Resolution during the Supreme Court's review. *Id.*

Similarly, in the *San Carlos* and *Arizona Mining* cases, the government "surprised the Court" by announcing that it would "proceed with the land transfer immediately following the anticipated issuance of the FEIS"—leaving the Plaintiffs no time even to *review* the new EIS, much less for the district court to consider their claims. *San Carlos Apache Tribe v. United States Forest Serv.*, No. 21-cv-68, 2025 WL 1618410, at *3 (D. Ariz. June 9, 2025). The district court rejected this attempt to force a decision on a "compressed timetable" (or circumvent judicial review entirely) and instead enjoined the government from effectuating the transfer before the court had time to consider the claims. *Id.* at *10–11.

The motions panel in this appeal has now adopted a similar course—and rightly so. Given the undisputedly irreparable harm to Plaintiffs, and the wildly disproportionate balance of hardships, Dkt.5.1 at 16–18, the motions panel entered a

September 3, 2025
Page 3

brief administrative injunction to give the merits panel time to consider Plaintiffs' claims. Although the government obviously doesn't want the Court to think too long or hard about the merits, the need for an administrative injunction is a problem of the government's own making—and it pales in comparison to the many *years* of delay the government created and willingly tolerated for its own ends.

Given the existential stakes of this case, the Court should take the time it needs to make an informed decision. And for the reasons explained in our briefing, that decision should include an injunction pending appeal.

        Respectfully submitted,

        NELSON MULLINS RILEY & SCARBOROUGH LLP

By:   /s/ Miles E. Coleman
       Miles E. Coleman
       miles.coleman@nelsonmullins.com
       2 W. Washington Street, Suite 400
       Greenville, SC 29601
       Telephone: (864) 373-2352
       Facsimile: (864) 373-2925