Nos. 25-5185, 25-5189, 25-5197

# In The United States Court of Appeals for the Ninth Circuit

ARIZONA MINING REFORM COALITION; et al.,

*Plaintiffs-Appellants,*

v.

BROOKE L. ROLLINS, U.S. Secretary of Agriculture, et al.,

*Defendants-Appellees,*

and

RESOLUTION COPPER MINING LLC,

*Intervenor-Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Arizona
No. 2:21-cv-00122-PHX-DWL
Hon. Dominic W. Lanza

## MOTION OF RESOLUTION COPPER MINING LLC TO EXPEDITE RULING

Christopher D. Thomas
Andrea J. Driggs
Janet M. Howe
Benjamin A. Longbottom
HOLLAND & HART LLP
2398 E. Camelback Rd, Suite 650
Phoenix, AZ 85016
(602) 507-9704
CDThomas@hollandhart.com

Michael R. Huston
  *Counsel of Record*
Diane M. Johnsen
Nicholas S. Crown
Samantha J. Burke
Addison W. Bennett
PERKINS COIE LLP
2525 E Camelback Rd, Suite 500
Phoenix, AZ 85016
(602) 351-8000
MHuston@perkinscoie.com

*Counsel for Resolution Copper Mining LLC*

_____

SAN CARLOS APACHE TRIBE, a federally recognized Tribe,

*Plaintiff-Appellant,*

v.

UNITED STATES FOREST SERVICE,
an agency of the U.S. Department of Agriculture, et al.,

*Defendants-Appellees,*

and

RESOLUTION COPPER MINING LLC,

*Intervenor-Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Arizona
No. 2:21-cv-0068-PHX-DWL
Hon. Dominic W. Lanza

_____

GOUYEN BROWN LOPEZ, et al.,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA, et al.,

*Defendants-Appellees,*

and

RESOLUTION COPPER MINING LLC,

*Intervenor-Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Arizona
No. 2:25-cv-2758-PHX-DWL
Hon. Dominic W. Lanza

_____

## TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

BACKGROUND ................................................................... 4

ARGUMENT ...................................................................... 6

    A.    The temporary administrative injunction has exceeded any lawful duration.................................................. 7

    B.    Appellants' emergency injunction requests cannot withstand the mandatory *Winter* analysis ......................... 10

        1.    Appellants' claims of irreparable harm are insufficient to justify an injunction............................. 11

        2.    The record disproves Appellants' contention that they face any irreparable harm without an injunction .................................................. 13

        3.    The administrative injunction is causing severe and irreparable harm to the Resolution, the United States, and the public interest ......................... 14

CONCLUSION...................................................................... 18

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Al Otro Lado* v. *Wolf*,
    945 F.3d 1223 (9th Cir. 2019) ................................................................ 8

*American Fed'n of Gov't Employees, AFL-CIO* v. *Trump*,
    148 F.4th 648 (9th Cir. 2025) ............................................................... 9

*Doe #1* v. *Trump*,
    944 F.3d 1222 (9th Cir. 2019) ..................................................... 2, 9, 10

*Doe* v. *San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021) .................................................... 2, 3, 10

*Goldie's Bookstore, Inc.* v. *Superior Court*,
    739 F.2d 466 (9th Cir. 1984) ............................................................... 15

*Immigrant Defenders Law Ctr.* v. *Noem*,
    145 F.4th 972 (9th Cir. 2025) ............................................................. 12

*Index Newspapers LLC* v. *U.S. Marshals Serv.*,
    977 F.3d 817 (9th Cir. 2020) .......................................................... 9, 12

*June Med. Servs., L.L.C.* v. *Gee*,
    139 S.Ct. 661 (2019) (Alito, J., in chambers) ...................................... 8

*L.A. All. for Human Rights* v. *County of Los Angeles*,
    No. 25-6760 (9th Cir. Nov. 14, 2025) ................................................. 9

*Leiva-Perez* v. *Holder*,
    640 F.3d 962 (9th Cir. 2011) (per curiam) ........................................ 12

*Mi Familia Vota* v. *Fontes*,
    111 F.4th 976 (9th Cir. 2024) ............................................................. 11

*Mirabelli* v. *Bonta*,
    No. 25-8056, 2026 WL 44874 (9th Cir. Jan. 5, 2026) ......................... 8

*National Urban League* v. *Ross*,
    977 F.3d 698 (9th Cir. 2020) ................................................................ 8

*Nken* v. *Holder*,
556 U.S. 418 (2009) .................................................................. 9, 11, 12

*Respect Maine PAC* v. *McKee*,
562 U.S. 996 (2020) .................................................................. 8, 11, 12

*Roman* v. *Wolf*,
No. 20-55662 (9th Cir. July 1, 2020) ................................................... 8

*Sierra Club* v. *Trump*,
929 F.3d 670 (9th Cir. 2019) ........................................................... 12

*United States* v. *Texas*,
144 S.Ct. 797 (2024) ....................................................... 2, 8, 9, 10

*Washington* v. *Trump*,
847 F.3d 1151 (9th Cir. 2017) ......................................................... 12

*Winter* v. *Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) .................................................... 2-4, 6, 10-12

*Wisconsin Right to Life, Inc.* v. *FEC*,
542 U.S. 1305 (2004) .................................................................... 6

## STATUTES

Southeast Arizona Land Exchange and Conservation Act,
16 U.S.C. § 539p ..................................................... 1, 4, 5, 10, 11
   16 U.S.C. § 539p(a) ............................................................ 4, 7
   16 U.S.C. § 539p(c) ........................................................... 4, 11
   16 U.S.C. § 539p(g) .............................................................. 4
   16 U.S.C. § 539p(i)(3) .......................................................... 13

## OTHER AUTHORITIES

Fed. R. App. P. 8(a)(2)(E) ............................................................. 8, 15

Fed. R. App. P. 27 ....................................................................... 1

Fed. R. Civ. P. 65(b)(2) ................................................................. 8

Ninth Circuit Rules ................................................................... 1, 3

## INTRODUCTION

Pursuant to Federal Rules of Appellate Procedure 8 and 27 and Circuit Rule 27-12, Appellee Resolution Copper Mining LLC respectfully moves to expedite the ruling on Appellants' pending emergency motions to enjoin execution of the Southeast Arizona Land Exchange and Conservation Act (Exchange Act), 16 U.S.C. § 539p, pending appeal.

The Exchange Act provides that, no more than 60 days after the government's publication of a final environmental impact statement (FEIS), the government "shall" transfer the relevant federal lands to Resolution. That FEIS was published on June 20, 2025, meaning that Congress unambiguously required the land transfer to be completed no later than August 19, 2025.

That clear statutory command has been blocked for six months by this Court—*with no reasons given*. The district court denied Appellants' requests to preliminarily enjoin execution of the Exchange Act, ruling on multiple independent grounds that Appellants were not entitled to that extraordinary remedy. The district court also declined to enjoin the land exchange pending appeal. Appellants then requested that this Court grant an "emergency" injunction pending appeal. A motions panel of this Court expressly *declined* to consider the merits of Appellants' requests, and instead referred them to the merits panel. The motions panel also issued a "temporary" "administrative" injunction against implementing the Act on August 18, 2025, in order to give the panel time to review

Appellants' emergency motions. The parties completed briefing in October 2025, and the panel heard oral argument in January. Yet the administrative injunction is still in effect more than two months later.

Resolution thus moves that this Court expedite its decision on Appellants' still-pending motions for an injunction pending appeal. This Court's administrative injunction against an Act of Congress has been in effect for more than *six months*, even though no judge has ordered that such relief is warranted, let alone found that Appellants have satisfied the factors required under *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Respectfully, the Court's multi-month delay in adjudicating Appellants' motions, while simultaneously maintaining an administrative injunction, is clearly inconsistent with Supreme Court precedent, which requires that an injunction against a statute be based on a judicial determination of the *Winter* factors. *Id.* at 20; *see Doe* v. *San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176-1177 (9th Cir. 2021) ("To determine whether to grant an injunction pending appeal, this court applies the test for preliminary injunctions.").

An administrative injunction merely "freeze[s] legal proceedings until the court can" decide whether to grant relief, and therefore "should last no longer than necessary to make an intelligent decision on the motion." *United States* v. *Texas*, 144 S.Ct. 797, 798-799 (2024) (Barrett, J., concurring); *accord Doe #1* v. *Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) (an "administrative stay" is "only intended to preserve the status

quo until the substantive motion for a stay pending appeal can be considered on the merits"). By any reasonable measure, this Court has had adequate time to review the parties' emergency-motion papers and decide whether to grant an injunction pending appeal. Indeed, this Court heard oral argument on the appeal itself more than nine weeks ago on January 7, 2026, after which it would ordinarily vote on the outcome of the appeal. *See* Court Structure and Procedures E.8, Ninth Circuit Rules at xix.

The Supreme Court has made clear that the touchstone for any request for an injunction pending appeal is which side is "likely" to prevail on the appeal. *Winter*, 555 U.S. at 20; *see Doe*, 19 F.4th at 1176-1177. Now that this Court has presumably voted on this appeal, Supreme Court precedent appears to permit only two viable options for handling Appellants' emergency motions, both of which require expeditious action: If this Court has voted to affirm the district court, then it should promptly lift the administrative injunction and deny the motions for emergency relief—if necessary, with written opinion(s) to follow later. If this Court has voted to reverse the district court's denial of a preliminary injunction, then it should promptly issue an order stating its reasons for granting Appellants' emergency motions to enjoin the land exchange, thereby potentially enabling the en banc Court or the Supreme Court to evaluate those reasons. The one thing Supreme Court precedent does not allow is for this Court to prepare its merits opinion(s) in this appeal without expedition, while leaving the "administrative" injunction in place.

Appellants oppose this motion—even though they themselves previously requested expedited treatment of their emergency motions. The United States supports this motion.

## BACKGROUND

1.  The Exchange Act requires the Secretary of Agriculture to convey to Resolution a parcel of federal land known as Oak Flat to enable Resolution to produce enormous supplies of copper—a mineral indispensable to American life and national security. 16 U.S.C. § 539p(c)(8). Resolution, for its part, will convey to the United States a much larger swath of land, including the culturally significant "Apache Leap" location, for permanent conservation. *Id*. § 539p(g). Consistent with the urgent national-security need for copper, Congress specifically directed that the land exchange be "expedite[d]." *Id*. § 539p(a); *see also* Dkt. 148.1 ¶¶ 7, 10 (Declaration of Michael P. Cadenazzi describing national-security interests in expeditious resolution of Appellants' motions).

2.  In July 2025, Appellants filed suit to enjoin the statutorily mandated conveyances and requested a preliminary injunction. In two orders totaling 115 pages of detailed analysis, the district court identified multiple independent reasons why Appellants are not entitled to that "extraordinary remedy." 1-AMRCER-2–95; Lopez-ER-4–23; *see Winter*, 555 U.S. at 20. First, none of Appellants' claims raises even a "serious question" on the merits. 1-AMRCER-7; Lopez-ER-22. The district court then held that, even if Appellants could overcome the substantive defects

in their claims, the court "would still decline to issue injunctive relief" because Appellants cannot satisfy the third and fourth equitable factors. *Id.* As the court explained, the judiciary cannot override Congress's decision to exchange the land at issue because that choice properly lies with "the political branches." *Id.*

The district court also denied Appellants' requests for an injunction pending appeal, reiterating that such relief was inappropriate because "the *merits* of [those] claims do not … present close or serious questions." 1-AMRCER-95. The court further explained that the Exchange Act "evinces a public interest in expediting the land exchange and allowing it to occur on the timetable that Congress contemplated." *Id.*

3. Two days before the statutory deadline for completing the land exchange, Appellants filed emergency requests for injunctions pending appeal. A motions panel of this Court declined to rule on those motions and explicitly took "no position on [their] merits." Dkt. 19 at 2. Instead, on August 18, 2025, the motions panel referred the emergency motions to the merits panel and granted a "temporary administrative injunction" blocking the land exchange until the merits panel could consider those motions. *Id.*

4. Appellants' emergency motions for an injunction pending appeal remain pending. On September 30, 2025, Appellees moved to dissolve the administrative injunction and deny Appellants' pending motions for an injunction pending appeal. Dkts. 83.1, 84.1. Those motions

too remain undecided. On October 30, the parties completed briefing on the underlying appeal. And on January 7, 2026, the merits panel heard oral argument on the substantive appeal.

The administrative injunction has remained in place since August 2025. Yet no judge has opined that such "extraordinary" relief against an Act of Congress is warranted under the controlling *Winter* factors. *Wisconsin Right to Life, Inc.* v. *FEC*, 542 U.S. 1305, 1305-1306 (2004).

## ARGUMENT

Resolution respectfully requests that this Court expedite its ruling on Appellants' still-pending emergency motions for an injunction pending appeal. The administrative injunction—which did not apply the *Winter* factors but has now effectively granted Appellants the very relief the district court denied them—has exceeded any lawful duration. It is now operating as a full-scale injunction pending appeal, because this Court has already heard oral argument on the merits and has had ample time to make an informed decision on the motions.

This Court should promptly deny Appellants' emergency motions. Appellants have not come close to demonstrating they are entitled to the "extraordinary remedy" of an "injunction pending appeal barring the enforcement of an Act of Congress." *Wisconsin Right to Life*, 542 U.S. at 1305-1306; *see* Dkt. 76.1 (Govt. Answering Br.); Dkt. 80.1 (Resolution Answering Br.); Dkt. 83.1 (Govt. Mot. to Dissolve) at 1, 7-8; Dkt. 84.1 (Resolution Mot. to Dissolve) at 7-9.

The continuing administrative injunction is causing ever-increasing irreparable harm to the United States by, among other things, frustrating Congress's bipartisan expression of the public interest in spurring development of domestic production of a mineral that is vital to U.S. national security. The administrative injunction is also irreparably harming Resolution and its employees, contractors, local government partners, neighboring communities, and other stakeholders in this mining project, which Congress "direct[ed]" and "expedite[d]" a decade ago. 16 U.S.C. § 539p(a). This Court should take up the emergency motions and deny them without further delay.

## A. The temporary administrative injunction has exceeded any lawful duration.

The administrative injunction has now been in effect for more than six months. It has persisted after the parties completed merits briefing, after Resolution and the government moved to dissolve the injunction, and even nine weeks after oral argument and (presumably) the Court's conference on the underlying appeal. The unreasoned order granting a "temporary administrative injunction" is now operating indistinguishably from an injunction pending appeal.

No rule or precedent permits a temporary "administrative" injunction against an Act of Congress in these circumstances. On the contrary, an administrative injunction exists in service of "docket-management" and only "freeze[s] legal proceedings until the court can" decide whether

to grant relief. *Texas*, 144 S.Ct. at 798 (Barrett, J., concurring). Thus, it "should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal." *Id.* at 799. That is especially true where, as here, the administrative order makes clear that it "does not reflect any view regarding the merits." *June Med. Servs., L.L.C.* v. *Gee*, 139 S.Ct. 661, 661 (2019) (Alito, J., in chambers). Indeed, a temporary injunction can remain in effect for only as long as the court requires "to review th[e] filings." *Id.*; *see, e.g.*, *National Urban League* v. *Ross*, 977 F.3d 698, 700-701 (9th Cir. 2020) (injunction remains in effect only "until the substantive motion for a stay pending appeal can be considered on the merits" (citation omitted)); *Al Otro Lado* v. *Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019) (administrative stay was "not in any respect on the merits of the dispute"); *cf.* Fed. R. Civ. P. 65(b)(2) (temporary restraining orders generally are "not to exceed 14 days").

Appellants' requested injunction pending appeal "demands a significantly higher justification than a request for a stay," because they seek "judicial intervention [that was] withheld by [the] lower court[]." *Respect Maine PAC* v. *McKee*, 562 U.S. 996, 996 (2020) (citation omitted). In all events, this Court has consistently held that administrative orders of the sort entered by the motions panel here should be brief. *See, e.g.*, Order, *Roman* v. *Wolf*, No. 20-55662 (9th Cir. July 1, 2020), Dkt. 5 ("temporary" administrative stay in place for seven days; emergency stay motion ultimately denied); *Mirabelli* v. *Bonta*, No. 25-8056, 2026 WL 44874 (9th Cir.

Jan. 5, 2026) (10 days); Order, *L.A. All. for Human Rights* v. *County of Los Angeles*, No. 25-6760 (9th Cir. Nov. 14, 2025), Dkt. 11 (20 days); *American Fed'n of Gov't Employees, AFL-CIO* v. *Trump*, 148 F.4th 648, 654 (9th Cir. 2025) (25 days); *Index Newspapers LLC* v. *U.S. Marshals Serv.*, 977 F.3d 817, 824 (9th Cir. 2020) (44 days).

The Supreme Court and this Court have both cautioned against significant delays like the one that Appellants seek to prolong here. The "real problem" with administrative injunctions "is the risk that a court will avoid" consideration of the four-factor injunctive-relief test "for too long." *Texas*, 144 S.Ct. at 799 (Barrett, J., concurring) (citing *Doe #1*, 944 F.3d at 1226 (Bress, J., dissenting)); *see Nken* v. *Holder*, 556 U.S. 418, 434 (2009) (establishing factors for stays pending appeal). Put simply, "[o]nce the court is equipped to rule, its obligation to apply the [injunction] factors is triggered." *Texas*, 144 S.Ct. at 799 (Barrett, J., concurring). Two weeks are generally considered enough time to consider motions like Appellants'. *See id.* at 800 (stating that the circuit court could "presumably" decide the stay motion there "promptly," given that the motion had been "fully briefed" two weeks earlier and merits briefing was "underway"). Appellants themselves argued that temporarily "enjoining the land exchange for fourteen (14) days"—about six months ago—would have sufficed "to allow this Court to consider [Appellants'] request for an injunction pending appeal." Dkt. 5.1 (Lopez Mot.) at iv.

This case raises the same problems diagnosed in *Texas*: The unreasoned administrative injunction is causing irreparable harm. *See* pp. 14-18, *infra*. Whatever justification existed in August 2025 for ordering a brief pause to evaluate Appellants' emergency motions is unsustainable now, a half-year later. Respectfully, this Court "ha[s] had more than enough time to consider the merits, and under the circumstances, not considering the likelihood of success has the undesired effect of allowing a demonstrably incorrect injunction to remain in place without justification." *Doe #1*, 944 F.3d at 1226 (Bress, J., dissenting).

## B. Appellants' emergency injunction requests cannot withstand the mandatory *Winter* analysis.

For Appellants to be entitled to an injunction of the Exchange Act pending appeal, they must satisfy the traditional four-factor test for injunctive relief. *See Doe*, 19 F.4th at 1176-1177; *Winter*, 555 U.S. at 20. As the district court, the government, and Resolution have explained, Appellants have not and cannot satisfy any of the four *Winter* factors. 1-AMRCER-93–94; Dkt. 76.1 (Govt. Answering Br.) at 31-86; Dkt. 80.1 (Resolution Answering Br.) at 22-89.

After Resolution and the government moved five months ago to dissolve the administrative injunction, Appellants disclaimed any need to defend that injunction under *Winter*. Instead, Appellants argued that the existing injunction was required to maintain the "status quo" until

this Court rules on the merits of the appeal. Dkt. 118.1 (AMRC) at 1-2, 4-6; Dkt. 120.1 (Tribe) at 7-10; Dkt. 99.1 (Lopez) at 2, 4, 7-8.

Appellants' arguments lack merit. As explained below, Appellants must satisfy *each* factor under *Winter* to obtain injunctive relief. *See* pp. 12-13, *infra.* And Appellants' arguments are mistaken even on their own terms: It is *Appellants*, not Resolution or the government, who sought to alter the status quo in this Court. The administrative injunction altered the status quo by preventing execution of the Exchange Act, a ten-year-old statute that orders the exchange to occur within 60 days after the environmental impact statement is published. 16 U.S.C. § 539p(c)(10). Indeed, by definition, an injunction pending appeal upsets the status quo by requiring "judicial intervention that [had] been withheld by [the] lower court[]." *Respect Maine*, 562 U.S. at 996 (citation omitted).[1] Thus, Appellants' requests for an injunction pending appeal "demand[ed] a significantly higher justification." *Id.* They cannot carry that burden.

### 1. Appellants' claims of irreparable harm are insufficient to justify an injunction.

Appellants claimed in their emergency motions that they are entitled to an emergency injunction of the Act because a transfer of legal title to Oak Flat pending appeal will cause immediate irreparable harm. Dkt. 5.1 (Lopez) at 14; Dkt. 3.1 (AMRC) at 3; Dkt.12.1 (Tribe) at 11, 18. Those

---

[1] A stay, by contrast, is "ordinarily a mechanism to preserve, not upset, the status quo pending appeal." *Mi Familia Vota* v. *Fontes*, 111 F.4th 976, 984 (9th Cir. 2024) (citing *Nken*, 556 U.S. at 429).

supposed harms will not occur, as explained below. But regardless, a claim of irreparable harm, without more, is insufficient to sustain an injunction as a matter of law. That was the very error the Supreme Court corrected in *Winter*: The Court made clear that a party seeking injunctive relief "must" satisfy *each* of the four factors, 555 U.S. at 20, including "a strong showing that [the movant] is likely to succeed on the merits," *Immigrant Defenders Law Ctr.* v. *Noem*, 145 F.4th 972, 983 (9th Cir. 2025) (quoting *Nken*, 556 U.S. at 433-434); *Index Newspapers,* 977 F.3d at 824 (same). Even then, "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32.

This Court has similarly recognized that "[a] stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Index Newspapers*, 977 F.3d at 824 (citation omitted); *accord Sierra Club* v. *Trump*, 929 F.3d 670, 687 (9th Cir. 2019). Such equitable relief is "an exercise of judicial discretion" that should not "be issued 'reflexively,' but rather based on the circumstances of the particular case." *Sierra Club*, 929 F.3d at 688 (quoting *Nken*, 556 U.S. at 427, 433); *see Leiva-Perez* v. *Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam); *Washington* v. *Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017). The same principles follow *a fortiori* for an *injunction* pending appeal—a form of judicial intervention that requires a far more "demanding" showing. *Respect Maine*, 562 U.S. at 996; *see Winter*, 555 U.S. at 26.

### 2. The record disproves Appellants' contention that they face any irreparable harm without an injunction.

In any event, contrary to Appellants' assertion in their briefing and during oral argument (at 8:53, 58:55),[2] it is most definitely not true that the conveyance of Oak Flat to Resolution will cause the immediate destruction of any sensitive portions of the federal parcel. *Nothing* in the record supports that assertion. Gradual subsidence will not even begin *until approximately a decade after* Resolution takes title to the property, and full subsidence would not occur for multiple decades. 1-RCMSER-9–10 (Peacey Decl.) ¶ 13. In the meantime, Appellants will continue to be able to come onto the federal parcel for recreational and ceremonial purposes for at least ten years. 1-RCSMSER-10–12, ¶¶ 15-18; 16 U.S.C. § 539p(i)(3).

Nor is it true that Resolution will imminently and permanently alter the landscape of the federal parcel. Any underground drilling that Resolution might conduct in the near-term on the current federal land would be undertaken from *already existing* roads and drill-pads, 1-RCM-SER-8–11 ¶¶ 10-11, 15-16; *see* Oral Argument at 46:56-47:33, meaning that it would be no more destructive or intrusive than the existing Forest Service roads and other infrastructure, 1-RCMSER-10–11 ¶¶ 15-16.

---

[2] https://www.ca9.uscourts.gov/media/audio/?20260107/25-5185/.

Resolution's President has committed to these representations under penalty of perjury. 1-RCMSER-14. Those commitments are judicially enforceable by civil contempt and principles of estoppel.

### 3. The administrative injunction is causing severe and irreparable harm to the Resolution, the United States, and the public interest.

Appellants' arguments also overlook the severe and irreparable countervailing harms that Resolution and the United States are suffering from the current administrative injunction. Those harms, which the motions panel did not address let alone weigh, themselves require a prompt decision on Appellants' still-pending emergency motions.

First, the United States has extensively described the national-security interests of the Nation in allowing the land exchange to go forward expeditiously. Dkt. 83.1 (Govt. Mot. to Dissolve) at 7-8; *see* Dkt. 148.1 (Cadenazzi Decl.) ¶¶ 12-13. Congress agreed with the Executive Branch's assessment about the national-security imperative to complete this land exchange, which is why Congress directed that the exchange be "expedited." Dkt. 83.1 (Govt. Mot. to Dissolve) at 8-9; *see* Dkt. 148.1 (Cadenazzi Decl.) ¶¶ 7, 10.

The current unsupported administrative injunction, moreover, is unfairly imposing drastic and irremediable harm on Resolution. In reliance on Congress's promise to convey the land within 60 days of issuance of an FEIS, Resolution incurs approximately $11 million in unrecovera-

ble expenses each month to maintain its thousands of feet of underground mining infrastructure while it awaits the Court's decision on Appellants' still-pending emergency motions. Dkt. 84.2 (Supp. Peacey Decl.) ¶ 22 (describing significant costs of "collecting, pumping and treating groundwater" in the mine and "regular maintenance and replacement of components"). Thus, while the unsupported administrative injunction has remained in place over the last six months, Resolution has incurred costs of about $66 million. And between 2021 and 2025, those costs totaled roughly $545 million. *Id.* Although monetary injuries do not usually constitute irreparable harm, that rule applies only where "adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc.* v. *Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984) (citing *Sampson* v. *Murray*, 415 U.S. 61, 90 (1974)). In this case, Resolution's continuing holding costs from the injunction are indisputably irreparable because it has no available compensatory remedy.[3]

The continued injunction is also causing Resolution other irreparable harms. Because the statutory land exchange is enjoined, Resolution faces a significant risk of having to reduce its on-site headcount by ten to

---

[3] Appellants have not posted a bond to secure the current injunction. They asked the district court to enter an injunction based on "no more than a nominal bond." AMRC Mot. for Prelim. Inj. at 30, No. 21-cv-122 (D. Ariz. July 14, 2025), Dkt. 87. The motions panel imposed no bond to secure the "temporary" injunction that it entered. Dkt. 19-1; *see* Fed. R. App. P. 8(a)(2)(E) (court "may condition" injunction pending appeal "on a party's filing a bond or other security").

twenty percent. Dkt. 84.2 (Supp. Peacey Decl.) ¶ 22. And because many of its highly skilled professional workforce are currently employed with little to do, significant numbers of its skilled technical staff are considering leaving Resolution, *id*. ¶ 24, likely not to return, *id*. ¶¶ 24-25.

The loss of these highly skilled professionals would be a particularly acute blow to the project. Those departures would represent a significant and irreversible loss of institutional knowledge—including highly specific technical knowledge in the areas of underground mine design and planning, geotechnical engineering, underground hardrock hydrogeology, geometallurgy, metallurgical engineering, construction engineering, and copper prophyry geology. Dkt. 84.2 (Supp. Peacey Decl.) ¶ 26. Moreover, the failure to promptly complete the land exchange stands to significantly delay the ability of Salt River Project to deliver critical electrical infrastructure like transformers and power lines to Resolution. *Id*. ¶ 32.

Beyond national-security interests, still other public-interest factors weigh against maintaining the administrative injunction or granting Appellants' emergency motions. Hundreds of jobs; tens of millions of dollars in investments in cultural, economic, employment, and educational initiatives; and Resolution's long-term business forecasts involving hundreds of millions of dollars all hang in the balance while Resolution waits for the government to implement Congress's directive. Dkt. 84.2 (Supp. Peacey Decl.) ¶¶ 28, 29.

Once the land exchange is complete, Resolution will draw its employees and contractors predominantly from neighboring local communities, including members of the San Carlos Apache Tribe—populations with historically high unemployment in the area known as the "Copper Triangle." Dkt. 84.2 (Supp. Peacey Decl.) ¶ 13. Resolution has budgeted around $100 million for its drilling program alone, and spending for underground development and associated surface construction on private land is anticipated to be around $250 million. *Id.* ¶ 14. Consistent with Resolution's past practice, much of this spending will be directed toward local and Arizona-based businesses and contractors. *Id.*

Dissolving the administrative injunction and denying Appellants' pending motions would also allow Resolution to release millions of dollars marked for substantial educational, employment, economic, and cultural investments in partnership with its neighboring municipalities, tribes, and business partners, including $12 million to be disbursed within 60 days to a trust established for the benefit of 11 tribes (including the San Carlos Apache Tribe). Dkt. 84.2 (Supp. Peacey Decl.) ¶ 15. Resolution will also distribute another $20 million in funds for recreational and riparian investments after the land exchange. *Id.* ¶ 17.

The hundreds of millions of dollars that Resolution is poised to disburse—and the resulting positive effects on the region's economy, culture, educational opportunities, and environment—will be frozen if the land exchange cannot close in short order. Dkt. 84.2 (Supp. Peacey Decl.)

¶ 20. Even more significantly, the longer the injunction remains in place, the more likely that Resolution's controlling owners may ultimately reduce their annual spend in favor of other projects—risking a loss, impacting the local and regional economy, further constraining the domestic supply of copper, and increasing global copper prices. *Id.* ¶ 34.

## CONCLUSION

The Court heard oral argument on January 7 and has had substantial opportunity to consider the merits of this appeal. Resolution respectfully requests that the Court expeditiously deny Appellants' motions for emergency relief pending appeal and dissolve the administrative injunction, if necessary with any opinions to follow. In the alternative, Resolution requests that this Court expedite its ruling on the merits of the appeal by issuing its judgment, again with opinions to follow if necessary, thereby superseding the administrative injunction.

Respectfully submitted,

*/s/ Michael R. Huston*

| | |
|---|---|
| Christopher D. Thomas | Michael R. Huston |
| Andrea J. Driggs | *Counsel of Record* |
| Janet M. Howe | Diane M. Johnsen |
| Benjamin A. Longbottom | Nicholas S. Crown |
| HOLLAND & HART LLP | Samantha J. Burke |
| 2398 E. Camelback Rd., Suite 650 | Addison W. Bennett |
| Phoenix, AZ 85016 | PERKINS COIE LLP |
| (602) 316-9334 | 2525 E Camelback Rd., Suite 500 |
| CDThomas@hollandhart.com | Phoenix, AZ 85016 |
| | (602) 351-8000 |
| | MHuston@perkinscoie.com |

*Counsel for Intervenor-Defendant-Appellee*
*Resolution Copper Mining LLC*

March 12, 2026

## CERTIFICATE OF COMPLIANCE

1.     This motion complies with the type-volume limitation of Ninth Circuit Rules 27-1(1)(d) and 32-3(2) because it contains 4,126 words, excluding the parts exempted by those rules.

2     This motion also complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*s/ Michael R. Huston*
**PERKINS COIE LLP**