Nos. 25-5185, 25-5189, 25-5197

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ARIZONA MINING REFORM COALITION, et al.,
*Plaintiffs–Appellants*,

v.

UNITED STATES FOREST SERVICE, et al.
*Defendants–Appellees*.
and
RESOLUTION COPPER MINING, LLC,
*Intervenor-Defendant–Appellee*

(caption continued on following page)

Appeal from the United States District Court for the
District of Arizona
Nos. 2:21-cv-68, 2:21-cv-122, 2:25-cv-2758 (Hon. Dominic W. Lanza)

**FEDERAL APPELLEES' RENEWED MOTION TO DISSOLVE THE ADMINISTRATIVE INJUNCTION**

EZEKIEL A. PETERSON
U.S. Department of Justice
999 18th St., North Terrace, Suite 600
Denver, CO 80202
(202) 598-6399
ezekiel.a.peterson@usdoj.gov

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

THEKLA HANSEN-YOUNG
ERIKA NORMAN
ANGELA ELLIS
*Attorneys*
Environment & Natural Resources Div.
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044

(caption continued from previous page)

---

SAN CARLOS APACHE TRIBE, et al.,
*Plaintiffs–Appellants*,

v.

UNITED STATES FOREST SERVICE, et al.
*Defendants–Appellees*.

and

RESOLUTION COPPER MINING, LLC,
*Intervenor-Defendant–Appellee*

---

GOUYEN BROWN LOPEZ, et al.,
*Plaintiffs–Appellants*,

v.

UNITED STATES OF AMERICA, et al.
*Defendants–Appellees*.

and

RESOLUTION COPPER MINING, LLC,
*Intervenor-Defendant–Appellee*

---

Federal Defendants-Appellees join the motion to expedite filed today by Intervenor-Defendant Resolution Copper Mining LLC, and also respectfully renew their September 30, 2025, request that this Court dissolve the temporary administrative injunction entered by the motions panel on August 18, 2025, Dkt. No. 19, and expeditiously deny the Plaintiff-Appellants' motions for an injunction pending appeal. The Plaintiff-Appellants oppose. The Lopez Plaintiff-Appellants specifically state "Plaintiffs-Appellants do not oppose a ruling granting Plaintiffs-Appellants' motion for an injunction, but they oppose this motion by [Resolution / the government] as duplicative and unnecessary."

As we explained in our September 30, 2025, motion, Dkt. No. 83.1, and our November 4, 2025, reply, Dkt. No. 152.1, this Court has impermissibly enjoined an Act of Congress without any determination that Plaintiffs have met their burden to obtain an injunction pending appeal. *See* Dkt. No. 19 at 2 ("tak[ing] no position on the merits of the [Plaintiffs'] motion"). An injunction pending appeal requires a clear showing that all four *Winter* factors are met. 555 U.S. 7, 24 (2008). No judge has made such a finding. And the only judge to review the merits and equities concluded that Plaintiffs were not entitled to *any* injunctive relief because their claims did not present close or serious questions. *San Carlos Apache Tribe v. U.S. Forest Service*, 803 F. Supp. 3d 879, 958 (D. Ariz. 2025). The injunction is also inflicting unwarranted harm to the interests of the United States.

1

An administrative stay—like the administrative injunction here—"buys the court time to deliberate" and therefore "should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal." *United States v. Texas*, 144 S. Ct. 797-98 (2024) (Barrett, J., concurring). It has now been nearly seven months since the Court entered the temporary administrative injunction. The appeal was fully briefed in November 2025. The Court heard argument on the merits on January 7, 2026. The ongoing administrative injunction has been transformed from a stop-gap tool affording time "to make an intelligent decision" into a full-blown injunction pending appeal. This is unlawful.

It is also inequitable. The administrative injunction is inflicting irreparable injury on the United States and is thwarting essential national-security interests. *See* Dkt. 148.1 (Cadenazzi Decl.) ¶¶ 7, 10-15; 1-AMRCER-83 (district court finding a strong "public interest" in compelling "the land exchange to proceed on the expedited timetable Congress contemplated").

Under *Winter*, the public interest merges with consideration of harm to the Federal Government. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The administrative injunction is damaging the public interest by preventing a conveyance that Congress explicitly mandated to ensure domestic production of a mineral vital to national security. The Exchange Act was passed by Congress and signed into law by President Obama with bipartisan support. Through that statute, Congress determined that

it was in the public interest to facilitate copper mining in Arizona and expand the Tonto and Coconino National Forests (and two national conservation areas) with land to be conveyed by Resolution. More than ten years and several administrations later, President Trump issued an Executive Order finding that the national and economic security of the country are acutely threatened by the United States' reliance on foreign mineral production and affirming the need for "immediate action to facilitate domestic mineral production to the maximum possible extent." Exec. Order No. 14241, § 1, 90 Fed. Reg. 13673 (Mar. 20, 2025); *see* Exec. Order No.14220, § 1, 90 Fed. Reg. 11,001 (Feb. 25, 2025) (domestic copper supplies are "essential to the national security, economic strength, and industrial resilience"). Under the March 2025 Executive Order, the Resolution Copper Project is classified as a "priority" mineral project.[1] And Resolution is among ten "critical mineral production projects" necessary "to facilitate domestic production of America's vast mineral resources to create jobs, fuel prosperity, and significantly reduce our reliance on foreign nations." White House, *Trump Administration*

---

[1] *See* FAST-41 Transparency Projects, Permitting Council, https://www.permits.performance.gov/permitting-project/fast-41-transparency-projects/resolution-copper-project (last visited March 12, 2026).

*Advances First Wave of Critical Mineral Production Projects* (Apr. 18, 2025).[2]

The nation's military has similarly concluded that "Copper is indispensable to a wide range of defense systems," and "reliable access to copper and its coproducts as essential to maintaining U.S. military readiness." Dkt. 148.1 (Cadenazzi Decl.) ¶ 7, 10. Accordingly, "[t]he United States must urgently increase both copper mining and copper refining capabilities to ensure sufficient domestic supply of this critical mineral and its critical coproducts to keep pace with, and reduce reliance on, foreign competitors and adversaries." *Id.* ¶¶ 7, 10.

The administrative injunction has thwarted the interests identified by the political branches. Indeed, by preventing the land exchange, the injunction has frustrated a mining project "uniquely positioned to help the United States address these critical national security risks" and to support "a vertically integrated U.S. copper supply chain." Dkt. 141.1 (Cadenazzi Decl.) ¶¶ 12-13.

In short, as Judge Lanza explained, the land exchange is the product of "a considered choice by the political branches to prioritize the significant potential benefits that Resolution Copper's mining activity is

---

[2] On August 29, 2025, Secretary Burgum issued a statement that "[t]he Resolution Copper project [in particular] is vital to America's long-term security, energy infrastructure and global competitiveness." Press Release (Aug. 29, 2025), https://www.doi.gov/pressreleases/secretary-burgum-urges-action-resolution-copper-project-after-ninth-circuit-stay.

4

expected to generate," including the "promoting [of] critical national security interests." 1-AMRCER-92–93. Congress's "considered choice" deserves great deference. *See United States* v. *Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) ("[A] court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" (citation omitted)); *accord American Trucking Ass'ns* v. *City of Los Angeles*, 559 F.3d 1046, 1059-1060 (9th Cir. 2009).

We therefore respectfully renew our request, and join Resolution Copper's motion, that this Court expeditiously dissolve the August 18, 2025, administrative injunction and deny the Plaintiffs' motions for an injunction pending appeal.

Respectfully submitted,

/s/ *Robert N. Stander*
ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*

EZEKIEL A. PETERSON
U.S. Department of Justice
999 18th St., North Terrace, Suite 600
Denver, CO 80202
(202) 598-6399

THEKLA HANSEN-YOUNG
ERIKA NORMAN
ANGELA ELLIS
*Attorneys*
Environment & Natural Resources Div.
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-2701

March 12, 2026

5

90-1-4-16263
90-2-4-16252
90-1-4-16516

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 934 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *Robert N. Stander*
ROBERT N. STANDER

Counsel for Federal Appellees